**In re Veronica Maria CALDERON–GARZA, Relator.**

No. 08–01–00496–CV.

Court of Appeals of Texas, El Paso.

June 27, 2002.

John L. Williams, El Paso, for relator.

Ken Slavin, Kemp, Smith, P.C., El Paso, for respondent.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and Ann Crawford McCLURE, JJ.

## OPINION ON PETITION FOR WRIT OF MANDAMUS

ANN CRAWFORD McCLURE, Justice.

This original proceeding in mandamus poses significant issues concerning the effect of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) on border communities. It is common practice for Mexican citizens to cross the international border in order to give birth to their children in the United States. The reasons they do so are varied and diverse, but the reasons are of lesser importance than the consequences of the decision.[1] Veronica Maria Calderon–Garza, Relator, seeks a writ of mandamus compelling the trial court to vacate its order, sustain her special appearance, decline jurisdiction of this case, and dismiss the suit. We deny relief.

---

**1.** Calderon advised the court that she wanted Mexican law to apply to any visitation Deram-bakhsh might have with their son.

## FACTUAL SUMMARY

Veronica Maria Calderon–Garza met real party-in-interest, Medhi Farshad Derambakhsh, in Guadalajara, Mexico in 1997 where both were attending medical school. She became pregnant in April 2000. Calderon received all of her prenatal care in Mexico. On or about January 18, 2001, Calderon traveled to El Paso, Texas, where her parents reside. She relied on them for financial assistance with the pregnancy. A boy, Diego Andres Calderon, was born in El Paso on January 27, 2001. Calderon does not dispute that Derambakhsh is the father. He resides in Yonkers, New York and has never resided in Texas.

Calderon notified Derambakhsh of the birth on February 7. He and his mother flew to El Paso on February 9 to see the child. He returned to El Paso on March 22 and requested that Calderon sign a voluntary paternity affidavit. Calderon refused and asked Derambakhsh to help her pay some of her medical bills. Derambakhsh provided her with some post-dated checks to cover her expenses. Calderon left El Paso on or about March 25 and returned to Mexico. Derambakhsh filed an original petition for voluntary paternity of a child on March 26. When he was unsuccessful in his attempts to serve Calderon at her parents' house and at her father's medical office, he obtained an order for substituted service. Calderon filed a special appearance, alleging that she was not amenable to process by a Texas court and that Texas lacked subject matter jurisdiction. An associate judge sustained the special appearance and ordered that Der-

ambakhsh's original petition for voluntary paternity of a child be dismissed with prejudice. Derambakhsh appealed to the referring court. Following a hearing on October 15, 2001, the trial court made the following pertinent findings:

- Calderon's legal domicile is in Guadalajara, Jalisco, Mexico.
- Grounds for personal jurisdiction provided in Section 102.011(b) of the Texas Family Code had been established.[2]
- The court had status and subject matter jurisdiction over the suit.
- Texas is the child's home state.

## STANDARD OF REVIEW

 Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992)(orig.proceeding). Moreover, there must be no other adequate remedy at law. *Id.* An appellate court rarely interferes with a trial court's exercise of discretion. A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)(orig.proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker,* 827 S.W.2d at 839–40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have decided the issue differ-

---

**2.** Section 102.011(a) provides that the trial court may exercise status or subject matter jurisdiction over a nonresident pursuant to the UCCJEA. Subsection (b) enumerates eight circumstances in which the court may also exercise personal jurisdiction over a party in a suit affecting the parent-child relation-

ship. The trial court did not enumerate which of the grounds had been established. We note, however, that Subsection (b)(4) authorizes personal jurisdiction if the person resided with the child in this state. *See* Tex. Fam.Code Ann. § 102.011 (Vernon Supp.2002).

ently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker,* 827 S.W.2d at 840. A writ of mandamus is an appropriate means to require a trial court to vacate a void order arising out of an erroneous assertion of jurisdiction under the UCCJEA. *Geary v. Peavy,* 878 S.W.2d 602, 604–05 (Tex.1994)(mandamus appropriate remedy to challenge jurisdiction under former UCJA); *In re Lambert,* 993 S.W.2d 123, 127 (Tex.App.-San Antonio 1999, orig. proceeding)(same). Subject matter jurisdiction is a question of law which we review *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

■■■ An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals,* 715 S.W.2d 638, 639–40 (Tex.1986)(orig.proceeding). Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *Walker,* 827 S.W.2d at 840, *quoting State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. However, in jurisdictional disputes arising from child custody proceedings, the relator need not demonstrate the inadequacy of an appellate remedy. *Lambert,* 993 S.W.2d at 127; *In re Jeffries,* 979 S.W.2d 429, 433 (Tex.App.-Waco 1998,

orig. proceeding). A "child custody proceeding" includes a suit for paternity. Tex.Fam.Code Ann. § 152.102(4).

## UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT

Effective September 1, 1999, Texas adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The provisions of the UCCJEA have international application to child custody proceedings and determinations of other countries; thus Mexico will be treated as if it were a state of the United States for purposes of applying the Act. Tex.Fam.Code Ann. § 152.105; *see* Sampson & Tindall, Texas Family Code Annotated § 152.105, *Commissioners' Comment* p. 472 (2001). A Texas court has jurisdiction to make an initial child custody determination only if Texas "is the home state of the child *on the date of the commencement* of the proceeding …." [Emphasis added]. Tex. Fam.Code Ann. § 152.201. "Home state" is defined as

> [T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months *immediately before* the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent.* A period of temporary absence of a parent or a person acting as a parent is part of the period. [Emphasis added].

Tex.Fam.Code Ann. § 152.102(7)(Vernon Supp.2002). Here, Calderon and the child left Texas the day before Derambakhsh filed suit. The issue before us focuses on the potential conflict between Sections 152.201 (Texas may exercise jurisdiction only if it is the home state *"on the date of the commencement"* of the suit) and

152.102(7)(defining home state as the state in which the child lived for at least six consecutive months *"immediately before the commencement"* of the suit).

### Statutory Construction

When construing a statute, we must consider the statute as a whole rather than its isolated provisions. *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). One provision should not be given meaning out of harmony or inconsistent with other provisions. *Id.* The well established rules of statutory construction require us to presume that the entire statute is intended to be effective. *See* TEX. GOV'T CODE ANN. § 311.021(2)(Vernon 1998). Applying the rules here to the Act as a whole, we presume that the first two sentences of Section 152.102(7) must be read together such that in the case of a child less than six months of age, the home state is that state in which the child lived from birth with a parent *immediately before the commencement of the child custody proceeding.* The language "on the date of the commencement" of the child custody proceeding in Section 152.201 is used as a point of reference from which to determine the child's home state according to the specific definition provided in Section 152.102(7). And the specific definition of "home state" requires us to determine where the child lived immediately before the commencement of the proceeding. Consequently, in order to determine a child's home state *on* a particular date, we must ask where the child lived *immediately before* that date. When analyzed in this way, we perceive no conflict between the two provisions.

### Home State Jurisdiction

Based on this analysis, Texas was the child's home state when Derambakhsh filed his paternity suit. The child was born in El Paso, Texas on January 27, 2001. He lived here with his mother from his birth until March 25, when he was taken to Mexico. Derambakhsh commenced the paternity suit on March 26. Although the child no longer lived in Texas on March 26—the date of commencement of the paternity suit—he had resided in Texas for the entirety of his life immediately before that date. Consequently, Texas was his home state for purposes of the UCCJEA.

Calderon contends that she is legally domiciled in Mexico and that her visit to El Paso was merely a "temporary absence" from her residence in Mexico. She claims that she did not actually "live" in Texas as the term is used in the definition of "home state" under Section 152.102(7). She maintains that the term "lived" encompasses a long term, permanent arrangement rather than a short term medical visit. In support of her claim, Calderon produced evidence that she is dual citizen of the United States and Mexico, votes in Mexico, has a Mexican passport, and plans to permanently live and practice medicine in Mexico. She argues that she came to El Paso only to give birth to the child and because she needed financial assistance from her parents, but intended to return to Mexico immediately. As we have mentioned, her situation is not an isolated one.

First, even if Calderon deems herself temporarily absent from her domicile in Mexico, the child cannot be considered temporarily absent because he was never physically present in Mexico prior to March 26. The San Antonio Court of Appeals has determined that the temporary absence provision of Section 152.102(7) cannot be construed to include periods before the child was first present in the claimed home state. *See In re Lambert,* 993 S.W.2d at 129; *Grimes v. Grimes,* 706

S.W.2d 340, 342 (Tex.App.-San Antonio 1986, writ dism'd).

Second, even if Calderon herself had no intention of permanently residing in Texas, her intention does not impact the determination of her *child's* home state under the facts presented. The evidence showed that the child was present in Texas with his mother from the day of his birth until immediately before commencement of the paternity suit on March 26. Regardless of how we define the word "live," at the very least one must be physically present in a place to live there. If the child cannot be said to have been temporarily absent from Mexico, then Texas qualifies as his home state. Because home state jurisdiction is prioritized over jurisdiction predicated on significant connections, we do not address Calderon's obvious connections to Mexico.

We conclude that the trial court appropriately determined the law and applied it to the facts; consequently, Relator has failed to demonstrate an abuse of discretion. Accordingly, we deny relief.