Filed 1/5/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| JOSEPH M. OCEGUEDA, | C073176 |
| Plaintiff and Respondent, | (Super. Ct. No. SF121866) |
| v. | |
| CHERISSE PERREIRA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yolo County, Samuel T. McAdam, Judge. Reversed.

Frank E. Dougherty for Defendant and Appellant.

William D. Kopper for Plaintiff and Respondent.


The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), adopted by California as Family Code section 3400 et seq., prescribes when a state court has jurisdiction to make an initial custody determination. Family Code section 3402, subdivision (g) provides with respect to a child less than six months of age that jurisdiction rests in the state in which the child "lived" from birth with a parent or a

1

person acting as a parent.[1]  That state is denominated the child's "home state."  While other jurisdictional options are provided, home state jurisdiction is paramount.

In this case of first impression, we are asked to decide whether California is the home state of a child who was born in Hawaii, remained in Hawaii for six weeks with his mother, then traveled to California with his mother, where, within 24 hours of his arrival, custody proceedings were commenced by his father in a California court.  The answer depends on whether the term "lived," as it is used in the statute, means simple physical presence in a state or, as father insists, requires an intent to remain in that state.

The trial court determined that mother, who lived and was employed in California prior to the child's birth, went to Hawaii to give birth but intended to return to California.  The court thus concluded that mother and the child "lived" in California, and their time in Hawaii was merely a temporary absence from California.

We disagree.  We conclude the child lived in Hawaii by virtue of the child's presence in Hawaii for the six weeks following his birth, leaving the state and traveling to California only 24 hours before father initiated these proceedings.  We further conclude this fleeting presence in California prior to commencement of these proceedings does not alter the conclusion the child lived in Hawaii.

Because the child was born in Hawaii and lived in Hawaii with his mother following his birth, Hawaii is the child's home state.

## BACKGROUND

Mother was born in Hawaii and lived there until 2007, when, at the age of 22, she moved to California.  Mother and father began dating in December 2010; shortly thereafter, mother moved into father's home in Woodland, California.  The relationship was "troubled"; father often drank alcohol to excess, which resulted in "problems."

---

[1]  Undesignated statutory references are to the Family Code.

2

Mother described one incident when she was pregnant with their child: father was drunk; he took her phone away and punched her in the stomach. In January 2012 father threatened to "kick" mother out of the house. Father denied he ever "violently touched" mother but admitted he occasionally drank to excess.

In June or early July 2012, after she became pregnant, mother told father she intended to move back to Hawaii. Father objected and they argued "for weeks" about her plan. Ultimately they reached an agreement, which mother later said she never intended to honor, that mother would travel to Hawaii for the birth of their child but would return to California two weeks after the child was born. Mother took a temporary leave of absence from her job at Cache Creek Casino and left for Hawaii on or about August 27, 2012.

The child was born on September 14, 2012; father was in Hawaii for the birth. On October 24, 2012, mother traveled to California with the child. The following day, father filed a parentage action in Yolo County. On October 30, 2012, he served mother with the summons and petition. On November 1, 2012, the parties stipulated to joint custody, set a shared parenting plan, and agreed not to travel out of California without the consent of both parties or a court order.

On November 9, 2012, mother notified Yolo County Superior Court that she had filed, or would be filing, a parentage action in Hawaii. On November 16, 2012, Yolo County Superior Court held a UCCJEA telephone conference with the Hawaiian court that was not recorded by a court reporter. That same day, the Yolo County Superior Court issued an order noting the two courts agreed California had jurisdiction over the child, but also said that decision was "made without prejudice" and the parties would have an opportunity to challenge that decision at a future hearing.[2] The court then set an

---

[2] We agree with mother. The order does not support a finding that the Hawaiian court declined to exercise jurisdiction over this matter. If, in fact, the courts had determined

3

evidentiary hearing for November 29, 2012, specifically to address the issues of UCCJEA jurisdiction and custody.

At the hearing on November 29, 2012, mother testified she never intended to return to California with the parties' child. Rather, she lied to father so that she could relocate to Hawaii with "less conflict" and raise their son there. The trial court found, however, there was a wealth of evidence that mother's original intent was consistent with the parties' agreement–that she would give birth to their son in Hawaii, then return to California to raise him.

In a written decision, the trial court noted mother never applied for a Hawaiian driver's license, never changed her cell phone coverage, did not move any furniture or personal belongings to Hawaii, did not quit her job in California until after father filed this action, did not seek work in Hawaii, had not begun to look for her own residence in Hawaii, and had decorated the child's room at father's house in California. The court also noted that after father filed this action in California, mother stipulated to a parenting plan and agreed not to travel out of California without father's consent or an order of the court, and she did not file her own action in Hawaii until "several weeks" after she stipulated to joint custody in California.

The trial court thus concluded that mother's stay in Hawaii was only a temporary absence from California: "The fact is that the child lived [in] Hawaii from birth until 1 day before the Court hearing. He lived temporarily 41 days in Hawaii and 1 day

that Hawaii had jurisdiction, either as the home state or the state with the most significant connection to the child, but Hawaii then had rejected jurisdiction, no further hearing would have been needed. Thus, we find the issue was not finally adjudicated until a hearing on November 29, 2012.

The order of dismissal from the Hawaiian court also is not evidence the Hawaiian court refused to exercise home state jurisdiction over this custody dispute because that order was not issued until February 2013, more than two months after the California trial court found California was the child's home state.

4

permanently in California."  Accordingly, the court ruled:  "Here, the child lived in both Hawaii and California prior to the filing of the petition.  The mother's stay in Hawaii, however, was a temporary absence.  Thus, the time in Hawaii should count towards determination of the home state status.  In that case, *at the time the action commenced*, the child lived in California for all 42 days.  Pursuant to Family Code sec. 3421 (a)(1), California is the home state of the child and this Court has jurisdiction to make an initial custody determination."

The trial court also determined that California had jurisdiction to make an initial custody determination because it was the state with the most significant connection to the child under section 3421, subdivision (a)(2).  In reaching its decision, the court found father "produced substantial evidence at the hearing concerning the child's care, protection, training and personal relationships."  The court noted that "father's whole life" is in California, including his family.  The court also found it relevant that mother was still employed in California at the time father filed the petition to initiate these proceedings, and she claimed disability leave insurance benefits from the State of California for her time off work after the child was born.  Moreover, many of mother's personal belongings remained in father's home, mother was still welcome to live in father's home, and the child had a nursery in father's home (decorated by mother).

Mother appeals from this order.

## DISCUSSION

The only issue on appeal is mother's claim that the trial court erred in finding California was the child's home state under the UCCJEA.

### I.

### Legal Principles

"It is well settled in California that the UCCJEA is the exclusive method of determining subject matter jurisdiction in custody disputes involving other jurisdictions. [Citations.]"  (*In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 376 (*Sareen*).)

5

"We are not bound by the [trial] court's findings regarding subject matter jurisdiction, but rather 'independently reweigh the jurisdictional facts.' [Citation.] '[S]ubject matter jurisdiction either exists or does not exist at the time the action is commenced' [citation] and cannot be conferred by stipulation, consent, waiver, or estoppel [citations]."[3] (*In re A. C.* (2005) 130 Cal.App.4th 854, 860.) "The action is commenced when the first pleading is filed [citations]": here, October 25, 2012. (*Sareen*, *supra*, 153 Cal.App.4th at p. 376.)

Section 3421, subdivision (a) confers jurisdiction on a California court "only if any of the following are true:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

---

[3] Accordingly, mother's stipulation to joint custody in the California court is insufficient to confer home state jurisdiction on California.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

"(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

Section 3402, subdivision (g) provides the definition for the term "home state" as used in section 3421: " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned.* A period of temporary absence of any of the mentioned persons is part of the period." (Italics added.)

## II.

### Hawaii is the Child's Home State

*A.     California cannot be the home state because the child was born in Hawaii.*

The statute is clear: "In the case of a child less than six months of age, the term [home state] means the state in which the child lived *from birth* with [a parent or a person acting as a parent]." (§ 3402, subd. (g), italics added.) Thus, according to the plain language of the statute, the period for determining the home state of a child who is less than six months of age starts with the child's birth. (§ 3402, subd. (g); see *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955 (*Haywood*) [no home state because child was not yet born when custody proceedings were initiated in both Michigan and California].) It is undisputed that here the child was born in Hawaii, not California. Therefore, California cannot be the child's home state.

Father relies on the decision in *In re Baby Boy M.* (2006) 141 Cal.App.4th 588 (*Baby Boy M.*) to support his claim that "[t]he place of birth is not significant to determine home state jurisdiction." Father is wrong.

7

*Baby Boy M.* was a dependency proceeding in which the whereabouts of the infant child were unknown. (*Baby Boy M.*, *supra*, 141 Cal.App.4th at pp. 594-595.) What the court did know was that Baby Boy M. was born in California. (*Id.* at pp. 594-595, 599.) Before Baby Boy M. was born, however, the birth mother planned to give the child to his biological father, who would then raise Baby Boy M. in Atlanta, Georgia. (*Ibid.*) Consistent with that plan, when the mother was released from the hospital two days after Baby Boy M. was born, she gave the infant to his biological father. (*Id.* at pp. 594, 599.) The appellate court held that California was not the child's home state. (*Id.* at p. 599.)

In reversing the juvenile court's orders, the appellate court found that although Baby Boy M. was born in California, there was insufficient evidence the child lived in California "until the initial detention hearing on April 4, 2005 . . . ." (*Baby Boy M.*, *supra*, 141 Cal.App.4th at p. 599.) The court thus relied on the lack of evidence that Baby Boy M. lived in California from birth until the date of the initial detention hearing in determining California could not be the child's home state.

Additionally, the court found that although California was not the child's home state, "because Baby Boy M. was born in California and was less than six months old at the time of the dependency proceedings, no state other than California could be his home state." (*Baby Boy M.*, *supra*, 141 Cal.App.4th at p. 600.) Jurisdiction over the child thus had to be conferred by a different statutory provision. (*Ibid.*)

Accordingly, the decision in *Baby Boy M.* does not support father's contention. On the contrary, it expresses a clear view that when a child is less than six months old at the commencement of custody proceedings, where that child was born is not merely relevant in determining the child's home state–it is essential. Here, because the child was born in Hawaii, California cannot be the home state.

**B.      *The child also "lived" in Hawaii.***

The next inquiry in determining whether Hawaii is the child's home state is determining whether the child "lived" in Hawaii following his birth. (§ 3402, subd. (g).)

8

The question of where a child "lives" for purposes of home state jurisdiction is a fundamental question not yet answered in California.

California courts have considered what it means to "live with" a parent or person acting as a parent. (See *Rogers v. Platt* (1988) 199 Cal.App.3d 1204 (*Rogers II*) [finding the child never "lived with" the mother in California because, although the child was born in California, the mother determined to give the child up for adoption before the child was born.].) California courts also have considered what it means to be temporarily "absent" from a state when a child lived in two or more jurisdictions prior to commencement of the proceedings. (See *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478 (*Nurie*); see also *Sareen*, *supra*, 153 Cal.App.4th at pp. 380-381.)

These decisions do not apply to circumstances where, as here, a child who is less than six months old at the commencement of the proceedings was born in one state, remained in that state with his mother for more than five weeks, then traveled to a second state less than 24 hours before commencement of the proceedings in the second state. The vital question before this court, therefore, is whether the child's physical presence in Hawaii from birth until the day before commencement of the proceedings means the child "lived" in Hawaii for purposes of determining home state jurisdiction under the UCCJEA. We conclude that it does.

**1.      A child must have been physically present in a state to confer home state jurisdiction.**

While California courts have yet not determined what it means "to live" in a state for purposes of home state jurisdiction, other courts have: the United States District Court for the District of Columbia in *Rogers v. Platt* (D.D.C. 1986) 641 F.Supp. 381 (*Rogers I*), the Texas Supreme Court in *Powell v. Stover* (Tex. 2005) 165 S.W.3d 322 (*Stover*), and the Illinois Supreme Court in *In re D.S.* (2005) 217 Ill.2d 306 [840 N.E.2d 1216] (*D.S.*). Because these decisions interpret the same statutory provisions, we consider them here. (See *In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 469

9

[decisions from other states interpreting similar provisions of the UCCJEA may be persuasive, except where the statutory schemes vary].)

In *Stover*, the Texas Supreme Court considered what it means to "live" in a state for purposes of conferring home state jurisdiction.[4] The Texas court looked to the plain meaning of the statutory language and found "[t]he word 'lived' strongly connotes physical presence. [Citation.]" (*Stover*, *supra*, 165 S.W.3d at p. 326.) The court found it "significant that the Legislature chose the word 'lived' as opposed to 'resided' or 'was domiciled.' The test for 'residence' or 'domicile' typically involves an inquiry into a person's intent. [Citation.] In our view, the Legislature used the word 'lived' 'precisely to avoid complicating the determination of a child's home state with inquiries into the state of mind of the child or the child's adult caretakers.' [Citation.]" (*Ibid.*) The Texas Supreme Court also considered the purpose of the UCCJEA. (*Stover*, *supra*, 165 S.W.3d at p. 326.) In so doing, the court reviewed the comments written by the National Conference of Commissioners on Uniform State Laws, appended to the original version of the UCCJEA, and found the Legislature drafted the statutory scheme in order to make "the determination of jurisdiction more straightforward." (*Stover*, at p. 326.) As noted by the Texas Supreme Court, those comments include the National Conference of Commissioners on Uniform State Laws' directive that the UCCJEA "should be interpreted to 'avoid jurisdictional competition and conflict with courts of other States,' to 'promote cooperation with the courts of other States,' to 'discourage the use of the interstate system for continuing controversies over child custody,' and to 'deter

---

[4] The Texas Family Code defines home state as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent.* A period of temporary absence of a parent or a person acting as a parent is part of the period." (Tex. Fam. Code, § 152.102, subd. (7), italics added.)

10

abductions of children.' UNIFORM CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT § 101 cmt., 9 U.L.A. 657 (1999)." (*Stover*, at p. 326.)

The Texas Supreme Court reasoned that this stated purpose for enacting the UCCJEA is achieved "by prioritizing home-state jurisdiction, which helps to avoid the jurisdictional competition and conflict that result when courts in different states determine jurisdiction based on subjective factors. [Citation.] The UCCJEA was thus intended to give prominence to *objective factors*. We believe that the UCCJEA should be construed in such a way as to strengthen rather than undermine the certainty that prioritizing home-state jurisdiction was intended to promote, and thus decline to apply a test to determine where a child 'lived' based on the parties' subjective intent. [Citations.]" (*Stover*, *supra*, 165 S.W.3d at p. 326, italics added.)

On this narrow issue we find the Texas Supreme Court's analysis in *Stover* to be persuasive; other courts throughout the United States have come to the same conclusion. [5] (See *In re Walker* (Tex. Ct.App. 2014) 428 S.W.3d 212, 216 ["The child's physical location is the central factor to be considered when determining the home state."]; see also *In re K.R.* (2012) 229 W.Va. 733, 742 [735 S.E.2d 882, 891] [the word "lived" is not to be confused with "residency" or "domicile"); see also *Sajjad v. Cheema* (2012) 428 N.J. Super. 160, 172-173 [51 A.3d 146, 154] ["lived" connotes physical presence in the state, rather than subjective intent to remain]; see also *Escobar v. Reisinger* (2003) 133 N.M. 487, 490 [64 P.3d 514, 517]; see also *Prizzia v. Prizzia* (2011) 58 Va. App. 137, 151 [707 S.E.2d 461, 468, fn. 6]; see also *Pierce v. Pierce* (Ala. Civ.App. 2010)

---

[5] This is not to suggest that the parties' subjective intent to remain in a jurisdiction is *never* relevant in determining home state jurisdiction, only that it is never relevant for determining whether a child "lives" in a particular state. When the child is moved to another state and "lives" in that second state, whether that is a temporary absence from the first state will often require inquiry into a party's subjective intent to remain in that state. (See *Nurie*, *supra*, 176 Cal.App.4th at p. 493, fn. 12.)

11

50 So.3d 447, 454-456; see also *In re Marriage of Marsalis* (Tex. Ct.App. 2011) 338 S.W.3d 131, 135-136; see also *In re Marriage of Schoeffel* (1994) 268 Ill.App.3d 839, 842 [644 N.E.2d 827, 829] (*Schoeffel*); see also *In re Marriage of Arulpragasam* (Ill. Ct.App. 1999) 709 N.E.2d 725, 732-733; see also *In re Calderon-Garza* (Tex. Ct.App. 2002) 81 S.W.3d 899, 903-904 (*Calderon-Garza*).)[6]

Father attempts to distinguish *Stover*. He contends the Texas Supreme Court's decision in *Stover* was based on its finding that the trial court erred by relying on the mother's intent to live in a particular place and failing to consider the father's intentions. Because the trial court here considered each parent's intention to live in California after the child was born, father argues *Stover* is inapplicable. Father misreads the court's ruling.

What the Texas Supreme Court held was that the mother's intent to live in a particular location was not controlling over the father's separate intent. (*Stover*, *supra*, 165 S.W.3d at pp. 325-326.) The court then went on to hold that "a test based on subjective intent--whether it examines the intent of the mother, the father, or the child--would thwart the UCCJEA's meaning and purpose." (*Stover*, at p. 326.) Thus, the decision did not rest on the fact that only the mother's intent was considered, and the court's analysis is applicable here.

---

[6] We recognize there appears to be a split of authority in the Illinois appellate courts on this issue; however, we find the reasoning in *Schoeffel* to be more persuasive. (See *Richardson v. Richardson* (1993) 255 Ill.App.3d 1099, 1102 [625 N.E.2d 1122, 1124] [in deciding the child's home state, courts "must not only examine whether the child was physically in that state, but also, under what circumstances the child came to and remained in the state."]; see also *In re Frost* (1997) 289 Ill.App.3d 95, 102-103 [681 N.E.2d 1030, 1035-1036].) We also note the Illinois courts appear to be split on what it means to be temporarily absent from a jurisdiction and how that absence impacts where a child is living. While the analysis can inform our decision here, it is a slightly different question than the one presented in this matter.

## 2. A parent's subjective intent to remain in a state is irrelevant for purposes of determining whether a child "lives" in that state.

Father argues, and the trial court agreed, "to live" in a state requires that a person intends to make that state his or her permanent residence. Thus, father argues, the child "lived" in California at the time the custody proceedings commenced because mother never intended to remain in Hawaii and always intended to return to California to raise the child. In support of his argument, father relies on *Nurie*, *supra*, 176 Cal.App.4th 478. The decision in *Nurie* does not support father's argument.

In *Nurie*, the court had to determine whether California or Pakistan was the home state of a child who was born in California and lived in California with both parents until he was five months old, when he was taken to Pakistan by his mother for a family visit but was kept in Pakistan for another four months before the father initiated the custody proceedings in California. (*Nurie*, *supra*, 176 Cal.App.4th at p. 485.) Because the child lived in two different jurisdictions before the father initiated custody proceedings, the court looked to the mother's intent in leaving California for Pakistan in order to determine whether the child's absence from California was " 'temporary.' " (*Id.* at p. 493, fn. 12.)

The court did not address the narrow issue of what it means "to live" in a state for purposes of home state jurisdiction. On the contrary, the court assumed the child was "living" in California when he traveled to Pakistan with his mother. (*Nurie*, s*upra*, 176 Cal.App.4th at p. 493, fn. 12.) The child then remained in Pakistan for four months. (*Ibid.*) The child was thus "living" in Pakistan at the time the custody proceedings commenced.

With the child having now "lived" in multiple jurisdictions prior to commencement of the proceedings in California, the court was required to consider whether the child's time in Pakistan was a permanent relocation or a temporary absence

13

from California.[7]  (*Nurie*, *supra*, 176 Cal.App.4th at p. 493, fn. 12.)  To make that determination, the court looked to the mother's subjective intent.  (*Ibid.*)  In so doing, the court found that when the mother left California with the child in February 2003, she intended to return and her intent to return remained until May 2003, when she decided to stay in Pakistan with the child.  (*Ibid.*)

Accordingly, the court ruled that the period of time in which the child was living in Pakistan and mother intended to return to California was a temporary absence from California.  (*Nurie*, *supra*, 176 Cal.App.4th at p. 493, fn. 12.)  The court found that to be a four-month period.  (*Ibid.*)  Those four months were then appended to the time the child lived in California, and California was found to be the home state because it was the only state in which the child lived for six months prior to the custody proceedings.  (*Ibid.*)  Because the court never addressed what it means to "live" somewhere, father's reliance on the decision is misplaced.

Father also argues that in two cases arising from the same custody dispute, this court and the District Court for the District of Columbia "rejected the interpretation of the term 'lived from birth' to mean where the child existed."  (*Rogers I*, *supra*, 641 F.Supp. 381; *Rogers II*, s*upra*, 199 Cal.App.3d 1204.)  Father is wrong.

The relevant facts from *Rogers I* and *Rogers II* are as follows:  the plaintiff was an expectant mother who wanted to place her expected child up for adoption; the defendants, who lived in Washington, D.C., wanted to adopt the child.  (*Rogers II*, *supra*, 199 Cal.App.3d at p. 1206.)  The child was born in Sacramento on June 14.  (*Ibid.*)  The following day, the defendants arrived in Sacramento.  (*Id.* at p. 1207.)  The plaintiff

---

[7] Thus, father's concern that under the physical presence test, "[a]ny extended visit of six months would automatically vest another state with jurisdiction over custody" is unwarranted.  Jurisdiction would not vest in the second state if the court determined the child's extended visit was only a "temporary absence" from the first.

14

executed a release, granting the defendants temporary custody of the child; the defendants returned to Washington, D.C., with the child on June 16. (*Ibid.*) A few days later, the plaintiff changed her mind about the adoption and a custody dispute ensued in both California and Washington, D.C. (*Id.* at p. 1208.)

The matter reached the District of Columbia District Court first; the issue was whether California or Washington, D.C., was "the appropriate forum to resolve the child custody dispute under the federal Parental Kidnapping Prevention Act of 1980 . . . . [Citation.]"[8] (*Rogers II*, *supra*, 199 Cal.App.3d at p. 1206; see *id.* at pp. 1208-1209.) In that appeal, the district court took exception to the trial court's finding that the child " 'never lived in California.' " (*Rogers I*, *supra*, 641 F.Supp. at pp. 385-386.) The district court noted that "[a] strict construction of where the child 'lived from birth' would be where the child existed or was alive immediately following the time of birth." (*Id.* at p. 386.) The court thus found the child "lived" in California for two days immediately following his birth. (*Ibid.*) Accordingly, the court concluded, Washington, D.C., could not be the child's home state. (*Id.* at pp. 386-387.)

The District of Columbia District Court also ruled California could not be the child's home state. (*Rogers I*, *supra*, 641 F.Supp. at pp. 386-387.) In reaching that conclusion, the court reasoned that although the child lived in California for two days after he was born, he was not living in California "*with 'a parent or a person acting as a parent'*" because the mother planned to give the child up for adoption before the child was born and followed through with her plan after the child was born. (*Id.* at p. 386.) The court explained that "to 'live with' someone requires a deliberate manifestation to share a common place with the person during a substantial period of the time involved.

---

[8] The federal Parental Kidnapping Prevention Act of 1980 includes the same definition of "home [s]tate" as the California Family Code, section 3402, subdivision (g). (See 28 U.S.C. § 1738A(b)(4).)

15

Since an infant cannot make such a manifestation, the Court must look to the mother in this situation. It is irrelevant whether this occurred in a hospital, house, or even a park or alley. It is also immaterial whether the two were physically present together. If the mother and child were isolated from each other for medical reasons, the focus of the Court would be the same." (*Ibid.*)

With no home state, the District Court of the District of Columbia found California was the proper forum for the dispute because California had the most significant connection to the child. (*Rogers I*, *supra*, 641 F.Supp. at p. 389.) We reached the same conclusion in *Rogers II*. (*Rogers II*, *supra*, 199 Cal.App.3d at pp. 1214-1215.)

In *Rogers II*, we found Washington, D.C., was not the child's home state because, although the child was living with the defendants, they had only temporary custody. (*Rogers II*, *supra*, 199 Cal.App.3d at p. 1213.) Thus, they were not the child's parents, nor did they "qualify as persons acting as parents." (*Ibid.*) In so finding, we expressly declined to consider the District of Columbia District Court's ruling that " '[a] strict construction of where the child "lived from birth" would be where the child existed or was alive immediately following the time of birth.' " (*Id.* at p. 1213, fn. 4.)

We did, however, agree with the District Court of the District of Columbia that " 'to "live with" someone requires a deliberate manifestation to share a common place with the person during a substantial period of the time involved,' " and the mother's conduct evidenced she had no intent to "live with" the child. (*Rogers II*, *supra*, 199 Cal.App.3d at p. 1214, quoting *Rogers I*, *supra*, 641 F.Supp. at p. 386.) Accordingly, we held, prior to commencement of the custody proceedings, the child never lived *with* a parent in California. (*Rogers II*, at p. 1214.) Therefore, California was not the child's home state; however, because California was the state with the most significant connection to the child, it was the appropriate forum for resolving the custody dispute. (*Id.* at pp. 1214, 1216.)

16

Father further contends that in *D.S.*, *supra*, 840 N.E.2d 1216, the Illinois Supreme Court found the intent to remain in a state to be the test for determining whether a child "lives" in a particular state. In *D.S.*, the mother, who had already had six children removed by the state, was pregnant with her ninth child and living in Illinois. (*D.S.*, *supra*, 840 N.E.2d at pp. 1218-1219.)[9] The father was living in Tennessee with their two youngest children. (*Id.* at p. 1218.) While in labor, the mother fled Illinois in a car in an effort to keep the State of Illinois from removing the expected child from her custody. (*Ibid.*) Driving to meet the father in Tennessee, the mother was forced to stop in Indiana to give birth. (*Ibid.*) The following day, the State of Illinois filed a "petition for adjudication of wardship" in Illinois. (*Ibid.*)

The trial court granted custody of the child to the Department of Children and Family Services (DCFS). (*D.S.*, *supra*, 840 N.E.2d at p. 1219.) The mother appealed, arguing the trial court lacked subject matter jurisdiction because at the time the wardship petition was filed, the child had never lived in Illinois. (*Ibid.*) Specifically, she argued Indiana was the child's home state because the child was less than six months old when the proceedings began, the child was born in Indiana, and the child " 'lived his entire life with his mother within the State of Indiana prior to being brought to Illinois by DCFS.' " (*Id.* at pp. 1220-1221.) The mother's appeal reached the Illinois Supreme Court. (*Id.* at p. 1220.) The Illinois Supreme Court ruled there was no home state and held Illinois had jurisdiction because it was the state with the most significant connection to the child. (*Id.* at pp. 1223-1224.)

---

[9] Illinois also defines home state as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (750 Ill. Comp. Stat. Ann., § 36/102, subd. (7), italics added.)

In reaching its decision, the Illinois Supreme Court focused on the fact that the child had not left the hospital before the proceedings commenced. (*D.S.*, *supra*, 840 N.E.2d at pp. 1221-1223.) In so doing, the court held that "a mere hospital stay" within a state is insufficient to confer home state jurisdiction under the UCCJEA because that state has a "de minimis interest in the child." (*Id.* at p. 1223.) Whether we agree with the court's focus on the difference between a house and a hospital, there is nothing on this record to suggest that the child here remained in the hospital in Hawaii until the day his mother brought him to California.[10] Accordingly, we find neither the holding nor the analysis in *D.S.* to be applicable to the circumstances here.

In sum, the cases relied on by father do not support his argument on appeal. Nor do they support the trial court's decision.

## C. *The child's fleeting appearance in California does not affect home state jurisdiction.*

Having concluded that Hawaii has home state jurisdiction, the only remaining question is whether the child's appearance in California 24 hours prior to commencement of these proceedings affects that decision. It does not.

For purposes of determining home state jurisdiction, it is relevant that the child was not physically present in California until 24 hours before father filed this action. The Texas Court of Appeals' discussion in *Calderon-Garza*, *supra*, 81 S.W.3d 899 is compelling in this regard. In *Calderon-Garza*, the mother and the father conceived a child in Mexico. (*Id.* at p. 901.) The father then returned to his home in New York, and

---

[10] (See *Rogers I*, *supra*, 641 F.Supp. at p. 386 ["In determining whether the child 'lived' in California, it should be irrelevant whether the child was in a hospital or more 'traditional' home, given the almost completely dependent nature of an infant."].)

in January 2001 the mother traveled to El Paso, Texas, where she gave birth to their son on January 27, 2001. (*Ibid.*)

The mother and the child remained in El Paso until March 25, 2001, when the mother returned to Mexico. (*Calderon-Garza*, *supra*, 81 S.W.3d at p. 901.) The following day, March 26, 2001, the father filed a paternity action in El Paso. (*Ibid.*) The mother argued Mexico had home state jurisdiction because she was a Mexican citizen, and when she traveled to El Paso, her intention was to return to Mexico. (*Id.* at p. 903.) The appellate court disagreed.

"First, even if [the mother] deems herself temporarily absent from her domicile in Mexico, the child cannot be considered temporarily absent because *he was never physically present in Mexico prior to March 26*. The San Antonio Court of Appeals has determined that the temporary absence provision of Section 152.102(7) cannot be construed to include periods before the child was first present in the claimed home state. [Citations.]

"Second, even if [the mother] herself had no intention of permanently residing in Texas, her intention does not impact the determination of her *child's* home state under the facts presented. *The evidence showed that the child was present in Texas with his mother from the day of his birth until immediately before commencement of the paternity suit on March 26. Regardless of how we define the word 'live,' at the very least one must be physically present in a place to live there.* If the child cannot be said to have been temporarily absent from Mexico, then Texas qualifies as his home state." (*Calderon-Garza*, *supra*, 81 S.W.3d at pp. 903-904, first and third italics added.)

### III.

### Conclusion

The child here was born in Hawaii. The child remained in Hawaii with mother for more than five weeks before mother brought the child to California. The child was then physically present in California for no more than 24 hours before father initiated these

19

proceedings. Under these circumstances, we conclude that the child "lived from birth" in Hawaii with his mother, a parent. Accordingly, at the commencement of these proceedings, Hawaii had home state jurisdiction.

We further find that Hawaii has not declined to exercise home state jurisdiction. Accordingly, we reverse the trial court's order.[11]

## DISPOSITION

The court's order finding California is the child's home state, with jurisdiction to issue an initial custody determination, is reversed. All custody orders previously issued by the Yolo County Superior Court are therefore void. The Yolo County Superior Court shall conduct further proceedings consistent with the UCCJEA and this opinion. (§ 3410.) Costs on appeal are awarded to mother. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


        RAYE        , P. J.


We concur:


      HULL      , J.


      MAURO      , J.

---

[11] Because we find Hawaii is the child's home state, we do not address the trial court's finding that California is the state with the most significant connection to the child under section 3421, subdivision (a)(2).