Filed 10/25/23; modified and certified for publication 11/14/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re KAYLA W., a Person Coming Under the Juvenile Court Law. | B326119 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP03176A) |
| Plaintiff and Respondent, | |
| v. | |
| LEYLA W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge. Affirmed.

Serobian Law and Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel for Plaintiff and Respondent.

———————————

Leyla W. (mother) appeals from an order terminating parental rights to her child, Kayla W. Mother contends that the court failed to comply with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA, Fam. Code, § 3400, et seq.).[1] We reject her contention and affirm the order.

## BACKGROUND

I.      Detention and UCCJEA proceedings

Kayla (born in September 2017) came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) after mother was arrested in May 2019. After mother's arrest, officers found one-year-old Kayla in a motel room, alone.

Mother, who was born in California, told an officer and a social worker that she had been living in Nevada since 2017 but had just moved back to California in May 2019 to find work and a place to live. Mother also said she was on probation in Nevada. According to mother, Ricky B., who was living in Nevada, was not Kayla's biological father but was raising her as his own child. Also, mother was pregnant with Ricky B.'s child, and after having that child, she had another child with him, but neither are

———————————

[1]     All further undesignated statutory references are to the Family Code.

2

parties to this proceeding. Mother has two older children who live with their father in Lancaster, California.

Based on mother having left Kayla alone at the motel, DCFS filed a petition alleging that mother failed to protect Kayla (Welf. & Inst. Code, § 300, subd. (b), count b-1).

At the May 2019 detention hearing, the court noted that there might be a UCCJEA issue and would discuss it with Nevada authorities. After doing so, the court informed counsel that Nevada would not assert jurisdiction if the prerelease investigation report on maternal grandfather, who lived in California and with whom mother wanted Kayla placed, was negative (meaning he was a proper placement) but would assert jurisdiction if the report was positive. It was thereafter discovered that maternal grandfather had a criminal record, but DCFS obtained a criminal exemption so that Kayla could be placed with him.

Accordingly, at the July 2019 adjudication hearing, the court informed the Nevada court, which was at the hearing telephonically, that Kayla would be placed with maternal grandfather. The Nevada court said it would relinquish jurisdiction "to allow counsel to proceed today with a permanent placement as the goal for this child." The juvenile court proceeded with adjudication, sustaining the petition but continuing disposition.

At the continued disposition hearing in October 2019, the court declared Kayla a dependent of the court and ordered her released to mother and Ricky B. (father), although the order was stayed and Kayla remained with maternal grandfather. Mother was also ordered to participate in random on-demand drug tests, parenting classes, and individual counseling.

II.     Further proceedings

In November 2019, the court vacated the home of parents order after discovering father had a warrant for his arrest and that parents were on parole in Nevada.  DCFS filed a subsequent section 342 petition, and the court sustained an allegation in the petition that father had a history of domestic violence (Welf. & Inst. Code, § 300, subd. (b); count b-2).  Although no allegations were sustained against mother, the court ordered her to provide five random or on-demand drug tests (to be increased to a full drug program if she missed tests or had a dirty test), individual counseling, and to follow through with criminal court orders in Nevada and California.  The court also ordered monitored visits with mother.

As of November 2019, mother and father were living in Nevada with their younger children.[2]

Due to the COVID-19 pandemic, the six-month review hearing was continued and held in February 2021.  The court found parents in partial compliance with their case plans and ordered continued reunification services.

According to the report prepared for the 12-month review hearing, Kayla remained placed with maternal grandfather.  Mother still had not resolved an outstanding California warrant, had not shown up for drug tests, and had not completed individual counseling, although she had completed a parenting education program.  Mother had in-person visits with Kayla in August 2021; otherwise, mother had regular Facetime visits with

---

[2]     DCFS points out that during some of the proceedings, it was unclear where father and mother were living.  Even so, there is no evidence that they returned to California to live.

4

Kayla.  At the 12-month review hearing in September 2021, the court again found parents in partial compliance with their case plans and ordered continued family reunification services.

Because parents continued to receive reunification services, maternal grandfather no longer wanted to adopt Kayla.  In December 2021, Kayla was therefore placed with another caregiver, who wanted to adopt her.

At the contested 18-month review hearing in January 2022, the court terminated reunification services, observing that mother lacked insight into what she had done and what she would do differently.  The court said "that much of the case has been punctuated with blame shifting, often misrepresentation of facts, and a lack of candor."  Mother filed a notice of intent to file a writ petition; however, her attorney filed a letter under *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, stating that after reviewing the record and researching potential issues, he could not file a writ petition.

Finally, in its report for the permanency planning hearing, DCFS noted that Kayla continued to do well in the home of her prospective adoptive parent, and she visited maternal grandfather once a month.  On November 18, 2022, the court terminated parental rights.

## DISCUSSION

I.    Overview of the UCCJEA

California and Nevada have adopted the UCCJEA, an act governing dependency proceedings that is the exclusive method to decide the proper forum to adjudicate issues involving a child subject to a sister-state custody order.  (§ 3421, subd. (b); *In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1096; *In re J.W.* (2020)

5

53 Cal.App.5th 347, 355 [every state except Mass. has enacted UCCJEA].) The UCCJEA "is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136.)

There are four ways in which a California court may assert jurisdiction over a child.

First, California was the child's home state when the proceeding was commenced, or was the child's home state within six months before commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. (§ 3421, subd. (a)(1).) "Home state" means the state in which a child lived with a parent for at least six consecutive months immediately before the beginning of the child custody proceeding. (§ 3402, subd. (g).)

Second, another state's court does not have jurisdiction under the first ground, or declines to exercise jurisdiction, and the child or at least one parent or person acting as a parent has a significant connection to California other than mere physical presence and substantial evidence is available in California concerning the child's care, protection, training, and personal relationships. (§ 3421, subd. (a)(2).)

Third, all courts having jurisdiction under the first two grounds have declined to exercise jurisdiction because California is the more appropriate forum. (§ 3421, subd. (a)(3).)

Fourth, no other state would have jurisdiction under the first three grounds. (§ 3421, subd. (a)(4).)

Interpretation of the UCCJEA is a question of law we review de novo. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th

6

1276, 1287.)  Otherwise, a court's jurisdictional finding under the UCCJEA is reviewed for substantial evidence.  (*Id.* at p. 1286.)  Under that standard of review, we resolve all conflicts in favor of the court's order and indulge reasonable inferences to uphold it.  (*Ibid.*)  Also, a failure to comply with the UCCJEA's procedural requirements is subject to harmless error analysis.  (*In re R.L.*, *supra*, 4 Cal.App.5th at p. 143.)  The party challenging a lower court's ruling must therefore show it is reasonably probable a result more favorable to the appellant would have been reached in the absence of any error.  (*Ibid.*)

II.     The court did not violate the UCCJEA

Mother does not contend California lacked jurisdiction over the dependency proceeding when it was commenced, as Kayla's home state Nevada declined to exercise jurisdiction (§ 3421, subd. (a)(2) & (3)).  She instead contends that Nevada's relinquishment of jurisdiction was conditioned on Kayla being placed with maternal grandfather, so once Kayla was removed from maternal grandfather in December 2021 and placed with another caregiver, the court had to contact Nevada so that it could reassert jurisdiction.  We reject this contention for several reasons.

A.     *Mother forfeited the UCCJEA issue*

Mother never objected to Nevada's declination of jurisdiction, California's acceptance of jurisdiction, or raised any jurisdictional issue when Kayla was removed from maternal grandfather's care.  Indeed, mother does not dispute that California had jurisdiction when dependency proceedings were commenced because Kayla's home state declined jurisdiction under section 3421, subdivision (a)(2) and (3).

7

Mother instead argues that Nevada had "continuing" jurisdiction or that California lost jurisdiction and that her failure to raise that issue below did not forfeit it on appeal. She cites *In re L.C.* (2023) 90 Cal.App.5th 728. In that case, neither DCFS nor the juvenile court, despite knowing of the mother's recent out-of-state residence and prior Texas child welfare case, investigated whether Texas might have jurisdiction under the UCCJEA. (*Id.* at p. 734.) Without deciding whether the UCCJEA concerns fundamental jurisdiction, which is an unsettled issue, the court found that the mother had not forfeited any issue under that statutory scheme and could raise it for the first time on appeal. (*Id.* at pp. 737–738; see generally *In re J.W.*, *supra*, 53 Cal.App.5th at p. 356 [fundamental jurisdiction is an absence of power to hear a case and can be raised for first time on appeal].)

*In re L.C.* is distinguishable. The objection mother now asserts to jurisdiction is not based on an argument that the California court lacked fundamental jurisdiction, which cannot be forfeited. Whereas the lower court in *In re L.C.* never addressed the UCCJEA, the California court here consulted Nevada, and the Nevada court declined to exercise home state jurisdiction, thereby ceding subject matter jurisdiction to California—all without objection from mother. Mother therefore acceded to jurisdiction and did not raise any jurisdictional issue for years while parental fitness was being adjudicated, only to assert a lack of "continuing" jurisdiction for the first time after a termination order. (See *J.W.*, *supra*, 53 Cal.App.5th at p. 367 [UCCJEA does not implicate fundamental jurisdiction and can be forfeited].) Under such circumstances, forfeiture applies. (See generally *In*

8

*re L.C.*, *supra,* 90 Cal.App.5th at pp. 738–739 [detailing forfeiture principles].)

B.  *Nevada did not and could not impose a jurisdictional condition precedent*

Turning to the merits, we reject the premise on which mother's contention rests, that Nevada imposed a jurisdictional "condition precedent" that Kayla be placed with maternal grandfather, impliedly permanently.  All the Nevada court said was that it would exercise jurisdiction if maternal grandfather's prerelease investigation report was positive but would not exercise jurisdiction if it was negative.  The Nevada court did not say the placement with maternal grandfather had to be permanent or that its ceding of jurisdiction was conditioned on Kayla remaining placed with maternal grandfather.  Nor can we see why the Nevada court would have made such an odd pronouncement, given that maternal grandfather's long-term intentions at that time were unclear and that the stability of Kayla's placement with him—like any placement in a dependency matter—was not a sure thing.

Nevada also could not have imposed such a condition precedent.  Instead, subject matter jurisdiction is established when the action is commenced, i.e., when the first pleading is filed.  (*Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1084.)  Once jurisdiction is established, the UCCJEA ensures that only one state has jurisdiction to make child custody decisions at any time.  (*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 521; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037; *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 497–498 [UCCJEA's major aim is to avoid concurrent jurisdiction].)  In *A.H.*, at page 521, for example, a Texas court

9

purported to cede jurisdiction to California only so long as the parents remained in California.  The appellate court found such equivocation legally untenable.  (*Ibid.*)  Instead, once a court having jurisdiction under section 3421, subdivision (a), makes a child custody determination, that court obtains exclusive, continuing jurisdiction.  (*In re E.W.* (2019) 37 Cal.App.5th 1167, 1171.)

C. *Sections 3429 and 3422 did not require the court to consult Nevada*

Mother cites sections 3429 and 3422 to support the notion that California had to consult Nevada when it removed Kayla from maternal grandfather.  Neither section helps her.

Section 3429 concerns what information each party must give in the first pleading.  Subdivision (d) of that section imposes on each party a "continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding."  Mother's argument appears to be that because Nevada was Kayla's home state when the dependency proceeding was commenced, section 3429 required the court to inform Nevada that Kayla had been removed from maternal grandfather.  Section 3429, however, imposes a duty on the *parties*, not the court.  Further, it imposes a duty on the parties to inform the court of a *proceeding* that could affect the current proceeding.  Kayla's removal from maternal grandfather was not a "proceeding" as contemplated in that subdivision.  (See, e.g., *In re Marriage of Nurie*, *supra*, 176 Cal.App.4th at p. 495 [mother's custody action in Pakistan was a proceeding father should have provided timely notice of to California court].)

Next, mother cites section 3422, subdivision (a).  That section provides that when a California court makes a child

10

custody determination under section 3421, the court has exclusive, continuing jurisdiction until either of the following occurs: "(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships. (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." (See generally *In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 491.)

To the extent mother's argument is that Kayla's removal from maternal grandfather triggered some kind of action or duty under section 3422, it is wholly unclear how that removal is related to section 3422 or triggered any action under it.

In any event, the conditions described in section 3422 do not exist here. As we have said, mother never asked the court to cede jurisdiction back to Nevada under section 3422, and Kayla has resided in California since at least 2019, first with maternal grandfather and then with another caregiver. Kayla therefore presently resides in California.

Moreover, there is substantial evidence that Kayla and mother have significant connections to California. Mother was born in California, mother appears to have lived in California until 2017, mother had outstanding warrants in California, she returned to California in 2019 with the intention of working and finding a place to live, mother has two older children who live with their father in Lancaster, maternal grandfather lives in California, and extended relatives (a maternal uncle and young

11

cousin) also reside in California. (See § 3421, subd. (a)(2).) While living with maternal grandfather, Kayla became attached to her maternal relatives, and the record suggests that Kayla's current caregiver continues to support those relationships by allowing Kayla to visit maternal grandfather monthly and to attend family parties. Thus, substantial evidence exists in California about Kayla's care, protection, training, and personal relationships. (See § 3422, subd. (a).)

Mother also relies on section 3422 to support her argument that California became an inconvenient forum. However, the convenience of the forum under the UCCJEA was determined when Nevada declined to exercise jurisdiction. Generally, "when a home state declines jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction . . . such inaction or refusal is tantamount to a declination of jurisdiction by the home state on the grounds California is the more appropriate forum under subdivision (a)(2) of section 3421." (*In re M.M.* (2015) 240 Cal.App.4th 703, 717.) When the proceeding was commenced, mother and Kayla were in California, and mother said she was in California to look for a job and a place to live. Moreover, *mother* asked that Kayla be placed with maternal grandfather. On these facts, California was a proper forum, and mother does not argue otherwise.

Nor did mother's decision to return to Nevada after these dependency proceedings had begun render California an inconvenient forum. Mother cites no authority that the convenience of the forum can be revisited, especially in the absence of a request that the court consider it, after a home state has declined jurisdiction and a parent has acceded to California's

12

jurisdiction. (See §§ 3421, subd. (a)(3); 3427 [stating factors relevant to determining inconvenient forum].)

And while mother's decision to go to Nevada—which we in no way criticize—made in-person visits more difficult, part of the reason for that was mother's decision not to return to California while she had an outstanding warrant. Mother also had the opportunity to challenge the reasonableness of DCFS's reunification services, and specifically its support of her visitation rights, when she filed a notice of intention to file a writ from the January 2022 order terminating reunification services. Instead, her attorney filed a letter under *Glen C. v. Superior Court*, *supra*, 78 Cal.App.4th 570, stating that after reviewing the record and researching potential issues, he could not file a writ petition. (*L.W. v. Superior Court*, B318153.)

Finally, mother points to the positive efforts she made towards reunifying with Kayla—for example, that her home in Nevada was appropriate and she complied with aspects of her case plan—to show it was prejudicial error to keep Kayla in California instead of placing her in Nevada so that mother could more easily visit her. Because we have found no error regarding jurisdiction, we need not address prejudice.

D. *Mother's constitutional rights were not violated*

For the same reasons, we reject mother's contention that "[h]olding Kayla in California, when mother had no financial means for travel and lodging nor caretaker for her two minor children in her custody" violated the First, Fourth, and Fourteenth Amendments of the United States Constitution. (See generally *In re J.R.* (2022) 82 Cal.App.5th 569, 572 [parents have fundamental liberty interest in companionship, care, custody, and management of their children].) As we have said, *mother*

13

asked that Kayla be placed with maternal grandfather *in California*.  While we appreciate the obstacles mother encountered in trying thereafter to have in-person visits with Kayla, mother cites nothing in the record showing that she raised these issues below or otherwise challenged the reasonableness of DCFS's reunification efforts on this ground, despite having the opportunity to do so.  We therefore do not agree that mother's constitutional rights were violated.

## DISPOSITION

The order terminating parental rights is affirmed.


EDMON, P. J.



I concur:



LAVIN, J.



EGERTON, J.


14

Filed 11/14/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re KAYLA W., a Person Coming Under the Juvenile Court Law. | B326119 |
| ———————————————— LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP03176A) |
| Plaintiff and Respondent, | **ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT]** |
| v. | |
| LEYLA W., | |
| Defendant and Appellant. | |

The opinion in the above-entitled matter filed October 25, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is ordered that the opinion be modified as follows:

On page 8, in the second paragraph, the citation "*J.W.*, *supra*, 53 Cal.App.5th at p. 367" should be changed to "*In re J.W.*, *supra*, 53 Cal.App.5th at p. 367."

On page 9, the citation to "*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 521" should be changed to "*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 520–521."

On page 12, in the first partial paragraph, following the last sentence, the citation to "§ 3422, subd. (a)" should be changed to "§ 3421, subd. (a)(2)."

[There is no change in judgment.]

_____

EDMON, P. J.        LAVIN, J.        EGERTON, J.