Filed 6/4/25  Thai v. Cao CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TIEN PHAN THAI,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>THUY DUNG THI CAO,<br><br>  Defendant and Appellant. | H052338<br>(Santa Clara County<br>Super. Ct. No. 20FL003621) |

In this dissolution and custody proceeding, Mother appeals a trial court order clarifying that California is the home state for the couple's minor child pursuant to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA).  Mother argues the trial court lacked the authority to issue the order—which she contends constituted a *sua sponte* reconsideration of a previous order which had determined that Vietnam was the child's home state—because the time to appeal the previous order had run, and because the trial court improperly conducted a new hearing with new evidence.  Mother also argues that the trial court erred in conducting the UCCJEA home state analysis, and improperly declined to recognize and enforce a 2023 judgment issued by a Vietnamese court purportedly awarding her custody of the child.

Father moved to dismiss the appeal on the ground that the challenged order was not a final appealable order, and that Mother failed to obtain the requisite certificate of probable cause to appeal an interlocutory order pursuant to Code of Civil Procedure section 904.1, subdivision (a)(10), and Family Code section 2025.  Mother contends the

order was a final appealable order pursuant to Code of Civil Procedure section 904.1, subdivision (a)(14), for "a final order or judgment in a bifurcated proceeding regarding child custody or visitation rights."

We conclude the challenged order is a final appealable order and we deny Father's motion to dismiss. On the merits, we conclude the trial court had the authority to issue the challenged order, and it properly determined that California is the child's home state pursuant to the UCCJEA. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Marriage and dissolution

Tien Phan Thai (Father) and Thuy Dung Thi Cao (Mother) were married on March 11, 2016, in Vietnam. Their daughter was born on June 14, 2016, in Vietnam (child 1). On March 13, 2020, Mother gave birth to another daughter in San Jose, California (child 2). Subsequent paternity tests in July 2021 established that Father was not the biological father of child 2.

Father petitioned for dissolution on October 23, 2020. Around the same time, he also filed a request for a child abduction prevention order, in which he stated that Mother had "moved here from Vietnam in January of 2020 and has made statements to the effect that she intends to go back," and "take the children with her."[1]

Mother submitted her response to the petition on November 20, 2020, in which she requested sole physical custody of the children, with Father receiving visitation rights.

---

[1] The copy of Father's request included in the record is signed and dated by Father as of October 22, 2020, although it does not include a file-stamp. In the trial court proceedings, both parties asserted that the request was filed on November 9, 2020, although there is no document in the record with that date on it.

2

### B. *Initial UCCJEA home state determination*

In connection with the dissolution proceeding, the parties submitted UCCJEA declarations. In her declaration filed on November 23, 2020, Mother stated that child 1 had been living with her and Father at a residence in San Jose since January 2020, and child 2 had been living with them at the same residence since her birth on March 13, 2020.[2]

The trial court held a hearing on November 30, 2020. The minute order for that hearing (November 2020 minute order) states that the court made the following findings: "3048 findings as to [child 1] for the State of California and Santa Clara County [¶] Vietnam is the home state for [child 2]."[3] According to the November 2020 minute order, the court also ordered that: (1) the children not be removed from California; (2) the parties engage in mediation; (3) Father have temporary non-supervised visitation rights every Saturday from 10:00 a.m. to 06:00 p.m.; and (4) Father's counsel shall maintain the children's passports.

---

[2] Father's UCCJEA declaration does not appear to be part of the record. However, there is no dispute that the children had been living at the residence in San Jose from January 2020 and March 2020, respectively.

[3] Family Code section 3048 provides that "in a proceeding to determine child custody or visitation with a child, every custody or visitation order shall contain" certain specified findings, and that "[i]n cases in which the court becomes aware of facts that may indicate that there is a risk of abduction of a child, the court shall, either on its own motion or at the request of a party, determine whether measures are needed to prevent the abduction of the child by one parent. To make that determination, the court shall consider the risk of abduction of the child, obstacles to location, recovery, and return if the child is abducted, and potential harm to the child if the child is abducted," by considering additional specified factors. (Fam. Code, § 3048, subd. (a), (b)(1).) Further, it provides that "[i]f the court makes a finding that there is a need for preventative measures after considering the factors listed in paragraph [(b)(1)], the court shall consider taking one or more of the following measures to prevent the abduction of the child [such as]: [i]ncluding provisions in the custody order to facilitate use of the [UCCJEA] and the Hague Convention on the Civil Aspects of International Child Abduction [citation], such as identifying California as the home state of the child or otherwise defining the basis for the California court's exercise of jurisdiction." (Fam. Code, § 3048, subd. (b)(2)(J).)

3

On February 10, 2021, the trial court issued its findings and order after hearing for the November 30, 2020, hearing (February 2021 order). The February 2021 order stated, contrary to the November 2020 minute order, that: "As to [child 2], California is the home state [and] California has jurisdiction to make custody and visitation orders for that child. [¶] As to [child 1], Vietnam is the home state or country as defined and Vietnam has jurisdiction to make custody and visitation orders for that child." The court also ordered that neither child "shall be removed from the State of California without a court order."

### C. Subsequent proceedings

The trial court held another hearing on February 18, 2021. The minute order for that hearing states that the trial court "takes temporary emergency jurisdiction over the minor child, [child 2] DOB: 06/14/2016." The minute order thus listed the date of birth for child 1, but with child 2's name. The minute order also provided that "[t]he minor child may not leave the United States till further order of the Court," and "[c]ustody and visitation is reserved till the trial on the DVRO on 7/7/2021."

The trial court's findings and order after hearing for the February 18, 2021, hearing is signed and dated December 10, 2021, and file-stamped December 17, 2021. That order stated the court was issuing "the following temporary orders: The Court takes temporary emergency jurisdiction over the minor child, [child 1] DOB: 06/14/2016 [¶] The minor child may not leave the United States till further order of the Court [¶] [c]ustody and visitation is reserved till the trial on the DVRO on 7/7/2021." This order thus appears to reflect the correct date of birth for child 1.

Another hearing was held on September 29, 2021. In the findings and order after that hearing, dated October 15, 2021, the trial court stated, among other things, that it was denying the parties' mutual requests for domestic violence restraining orders, and that "[a]ll temporary orders are hereby purged and terminated forthwith."

4

### D.  *Mother's request for order "clearly stating" UCCJEA jurisdiction*

On September 7, 2023, Mother filed a request for order, seeking "an appealable final order clearly stating whether Vietnam or California has jurisdiction over [child 1]."[4] According to her declaration, the court-approved child custody evaluator had "indicated that she is unsure if the Court has jurisdiction to order her to perform a child custody evaluation in light of The Socialist Republic of Vietnam, People's Court of Ho Chi Minh City's judgment that states that it has jurisdiction over [child 1]."  Accordingly, the child custody evaluator "requested that the Court provide clarification as to who has jurisdiction over [child 1], Vietnam or California."

Mother attached as an exhibit an April 28, 2023, judgment purportedly from a Vietnamese court stating that "[t]he custody of [child 1] is re-awarded to [Mother]."  She also asserted that the trial court had ruled back in November 2020 that Vietnam was the home state for child 1, and had not issued any subsequent orders to the contrary.

Father submitted a responsive declaration on October 6, 2023.  He stated that "Vietnam cannot be deemed the home state of [child 1] under UCCJEA [because] the child has been continuously living here in Santa Clara County since 1/22/20," and noting that child 1 "is now a United States citizen."  Father also asserted that the trial court had determined in February 2021 that California was the home state for child 1, and had subsequently exercised jurisdiction over child custody and visitation issues pertaining to her.

Father argued that the Vietnamese judgment was procedurally invalid because it had "failed to comply with the requirements of the procedural process as well as to communicate with the California Court to determine which county is the home state of the minor child."  Specifically, he contended that, pursuant to Article 17 of the Hague

---

[4] "In a family law proceeding, the term 'request for order' has the same meaning as the terms 'motion' or 'notice of motion' when they are used in the Code of Civil Procedure."  (Cal. Rules of Court, rule 5.63(a).)

Convention of 1996, the Santa Clara County Superior Court has jurisdiction, and the Vietnamese court lacked jurisdiction to adjudicate the matter.

In advance of the hearing, the parties then filed a flurry of documents with the trial court. Father submitted the following on February 13, 2024: (1) a supplemental declaration; (2) a memorandum of points and authorities in support of his opposition to Mother's request for an order; (3) a memorandum of points and authorities in support of a motion that the trial court lacks jurisdiction to adjudicate a foreign judgment; and (4) a request for an evidentiary hearing and witness testimony.

Mother filed a reply to husband's opposition with a supporting declaration on February 16, 2024, a supplemental declaration with an amended UCCJEA declaration on February 28, 2024, and an amendment to her supplemental declaration on March 1, 2024. The amended UCCJEA declaration asserted that child 1 had resided in Vietnam from her birth in 2016 to the present, contrary to her initial UCCJEA declaration filed in November 2020.

Father then filed a sur-reply and supporting declaration, as well as a supplemental request for judicial notice on March 14, 2024.

On March 18, 2024, Mother filed a response to Father's sur-reply, with a supporting declaration.

The hearing was held on March 28, 2024. The trial court issued its findings and order after hearing on May 9, 2024 (May 2024 order). The court began by recognizing the inconsistency between its February 2021 order—which identified Vietnam as the home state for child 1—and the November 2020 minute order, which identified California as her home state. "In other words," the court stated, "it is unclear whether the Court determined that Vietnam is [child 1's] home state for purposes of an initial custody determination."

Because the February 2021 order did not accurately reflect the information provided in the record, the court stated that it would "exercise its inherent authority to sua

6

sponte reconsider this clerical error by providing the parties with notice and an opportunity to be heard," citing *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107–1108 (*Le Francois*). The court explained that, by doing so, it intended to reevaluate the UCCJEA requirements "to make a clear determination as to [child 1's] home state in this case." The court stated that a " 'clerical error' results when the order or judgment as entered inadvertently misstates the court's actual intent," citing *Aspen International Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199 (*Aspen*), and *Bell v. Farmers Insurance Exchange* (2006) 135 Cal.4th 1138, 1144.

Citing Family Code section 3421, subdivision (a), and recognizing that the UCCJEA "gives absolute priority jurisdiction to the child's home state in all initial custody adjudications," the court determined that California was child 1's home state. In reaching that conclusion, the trial court relied solely on the following facts set forth in the parties' respective UCCJEA declarations from 2020: Father filed the petition for dissolution on October 23, 2020, at which point child 1 had been living in San Jose with both parents since January 2020.

The court held that "the record reflects California was [child 1's] home state when [Father] commenced the dissolution proceeding in October 2020. For this reason, and because only one forum can have UCCJEA jurisdiction at any point in time, the California court has jurisdiction to make an initial custody determination in this case."

The court then rejected Mother's argument that it should recognize and enforce the Vietnamese judgment which purported to award her legal and physical custody of child 1. The trial court held that the Vietnamese court lacked jurisdiction to make an initial custody determination in April 2023 because California had been the child's home state since October 2020. "Absent further information," the court stated, "it appears the custody orders provided in the Vietnamese judgment were not made in substantial conformity with the UCCJEA jurisdictional requirements. Therefore, even if Wife registered the Vietnamese judgment in this case, it would not be enforceable here."

7

### E.  Appeal

Mother filed a notice of appeal on July 1, 2024, purporting to appeal the May 2024 order as a "final order or judgment in a bifurcated proceeding regarding child custody or visitation rights," pursuant to Code of Civil Procedure section 904.1, subdivision (a)(14).

### F.  Motion to dismiss

Father filed a motion to dismiss the appeal in this court on September 23, 2024. He argues that the May 2024 order is not a final appealable order, but instead is an interlocutory order in a bifurcated proceeding, which may not be appealed before final judgment without a certificate of probable cause from the trial court, which Mother failed to obtain here.

Father cites Family Code section 2025, which provides:  "Notwithstanding any other provision of law, if the court has ordered an issue or issues bifurcated for separate trial or hearing in advance of the disposition of the entire case, a court of appeal may order an issue or issues transferred to it for hearing and decision when the court that heard the issue or issues certifies that the appeal is appropriate. Certification by the court shall be in accordance with rules promulgated by the Judicial Council."  In turn, rule 5.392 of the California Rules of Court sets forth the procedures for obtaining the requisite certificate of probable cause.  (Cal. Rules Court, rule 5.392; *In re Marriage of Lee and Lin* (2019) 41 Cal.App.5th 698, 700.)

Mother opposed the motion, arguing that the May 2024 order was a final order in a bifurcated proceeding regarding child custody or visitation rights pursuant to Code of Civil Procedure section 904.1, subdivision (a)(14).  Accordingly, she argued, she was not required to obtain a certificate of probable cause.  In addition, she argued that even if the May 2024 order were not a final appealable order, this court should construe her appeal as a petition for a writ of mandate.

We deferred resolution on Father's motion to dismiss for consideration with the merits.

8

## II. Discussion

### A.  Motion to dismiss

The one final judgment rule is "a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case." (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 697.)  " 'The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' "  (*Id*., quoting 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 58, p. 113.)

Code of Civil Procedure section 904.1 (hereafter, section 904.1) essentially codifies the one final judgment rule.  (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756 (*In re Baycol Cases*), citing *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 962–963.)  It provides that an appeal may be taken " '[f]rom a judgment'[citation] and in its remaining subdivisions lists various specific additional appealable orders that stand as exceptions to the general rule.' "  (*In re Baycol Cases, supra*, at p. 756.)

Two of those subdivisions are relevant here.  Section 904.1, subdivision (a)(10), allows for appeals from "an order made appealable by the Probate Code or the Family Code."  In a family law proceeding, the trial court "may bifurcate trial on one or more issues, including division of property or child custody, if resolution of the bifurcated issue is likely to simplify the determination of the other issues."  (*In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1433; Cal. Rules Court, rule 5.390 ["court may bifurcate one or more issues to be tried separately before other issues are tried"].)  "Although an order on a bifurcated issue is not separately appealable, the family law court may certify in its order that there is probable cause for immediate appellate review of the issue … ."  (*In re Marriage of Lafkas, supra*, 153 Cal.App.4th at p. 1433; Cal. Rules Court, rule 5.392; Fam. Code, § 2025.)  Thus, the Family Code makes certain

9

orders on bifurcated issues appealable pursuant to section 904.1, subdivision (a)(10), provided that the proper procedures are followed.

Section 904.1, subdivision (a)(14), provides that an appeal may be taken from a final order or judgment in a bifurcated proceeding regarding child custody or visitation rights. (Cal. Code Civ. Proc., § 904.1, subd. (a)(14); see also, Cal. Practice Guide Civ. App. & Writs Ch. 2-B, § 2.177.2 ["immediate appeal will lie *as a matter of right* from a final order or judgment in a bifurcated family law proceeding regarding *child custody* or *visitation* rights (i.e., there is no need for the superior court to certify the ruling for immediate appeal or for the court of appeal to grant a 'motion to appeal' ")].)

In addition, one exception to the one final judgment rule is the "so-called collateral order doctrine." (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561 (*Lester*).) Under that doctrine, "[w]here the trial court's ruling on a collateral issue 'is substantially the same as a final judgment in an independent proceeding' [citation], in that it leaves the court no further action to take on 'a matter which ... is severable from the general subject of the litigation' [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined." (*Ibid.*; see also 9 Witkin, Cal. Procedure, Appeal, § 99, p. 162 ["A necessary exception to the one final judgment rule is recognized where there is a final determination of some collateral matter distinct and severable from the general subject of the litigation."].)

For a collateral order to be appealable, "[i]t is not sufficient that the order determine finally for the purposes of further proceedings in the trial court some distinct issue in the case; it must direct the payment of money by appellant or the performance of an act by or against him." (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119 (*Sjoberg*).)[5]

---

[5] Some courts have interpreted a subsequent California Supreme Court decision—*Meehan v. Hopps* (1955) 45 Cal.2d 213—as holding otherwise. (See, e.g., *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297–298; *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 841–842 & fn. 3; *Lester, supra,* 84 Cal.App.4th at p. 562.)

Father argues that the May 2024 order was not a final appealable order. He cites *In re Marriage of Lafkas* for the proposition that "[a]n order from bifurcated issue is not separately appealable." He argues that the May 2024 order was only appealable if Mother sought and obtained a certificate of probable cause in compliance with Family Code section 2025 and rule 5.392 of the Rules of Court. Because Mother failed to do so, he contends, this court lacks jurisdiction to consider the appeal.

Mother argues that the May 2024 order is a final order in a bifurcated proceeding regarding child custody or visitation rights, and is therefore appealable pursuant to section 904.1, subdivision (a)(14). She contends that "the issue is not simply whether the order was from a bifurcated trial, but whether that order was a final order, resolving all of the issues regarding child custody or visitation rights." Because "all of the issues regarding the child custody and visitation rights between the parties have been resolved," Mother argues, the May 2024 order is a final order and she was not required to obtain a certificate of probable cause.

We conclude that the May 2024 order is appealable, either pursuant to section 904.1, subdivision (a)(14), or as a collateral order. As the May 2024 order reflects, its ruling was limited to making a determination under the UCCJEA. Although there does not appear to be any case law that has directly considered this issue, in our view, the May 2024 order bears the hallmarks of a collateral order that is separately appealable, even though other matters in the case remain to be determined.

Under the UCCJEA, once a trial court has made its initial "home state" custody determination pursuant to Family Code section 3421, subdivision (a), it establishes subject-matter jurisdiction over subsequent child custody determinations.[6] (Fam. Code, § 3421, subd. (a).) That determination also has a binding effect: "A child custody determination made by a court of this state that had jurisdiction under this part binds all

---

[6] We discuss the UCCJEA in greater detail below.

11

persons who have been served in accordance with the laws of this state or notified in accordance with Section 3408 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified." (Fam. Code, § 3406.)

Thus, the determination of a child's home state is substantially the same as a final judgment in an independent proceeding, in that it leaves the court no further action to take on that matter, which is severable from the general subject of the litigation. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1084, citing *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368, *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728, 735; see also, Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2024) Ch. 16-B, § 16.269.3 ["A direct appeal lies from an interim custody order determining which of competing forums properly may exercise custody *jurisdiction* under the UCCJEA" because the order is "collateral"].)

The May 2024 order also directs the performance of an act by requiring the parties to appear in the superior court in Santa Clara County and be subject to its jurisdiction. (See, e.g., *Lester, supra,* 84 Cal.App.4th at p. 563, fn. 16 [in dicta, analogizing to federal Parental Kidnapping Prevention Act (28 U.S.C. § 1738A)].)

Independent of the collateral order doctrine, the May 2024 order also constitutes a final order in a bifurcated proceeding regarding child custody or visitation rights. (Cal. Code Civ. Proc., § 904.1, subd. (a)(14); Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) Ch. 2-B, § 2.177.2.) The May 2024 order was limited to making a "clear determination" of child 1's home state pursuant to the UCCJEA and Family Code section 3421. It did not make any interim rulings regarding custody or visitation and it did not contemplate any future determinations regarding UCCJEA jurisdiction.

We deny Father's motion to dismiss.

12

### B. *Applicable law and standard of review*

Where interstate conflicts exist, the UCCJEA may apply to the exercise of subject-matter jurisdiction over child custody disputes. "[A]mong the primary purposes of the uniform acts is to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 497 (*In re Marriage of Nurie*); see also, Hogoboom and King, California Practice Guide: Family Law (The Rutter Group 2023) Ch. 3-A, ¶ 3:5.)

"The UCCJEA is a model law that 'arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.' [citation]." (*A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 349–350.) It ensures that only one state will have exclusive, continuing jurisdiction to modify a child custody determination, once made. (*In re J.W.* (2020) 53 Cal.App.5th 347, 354–355 (*J.W.*).)

"California adopted the UCCJEA effective January 1, 2000, and it is codified in section 3400 et seq." (*J.W., supra,* 53 Cal.App.5th at pp. 354–355; see also *In re Aiden L.* (2017) 16 Cal.App.5th 508, 516 ["designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees"].) The UCCJEA is the exclusive method of determining subject-matter jurisdiction in child custody cases in California. (*Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 702 (*Ariana K.*).)

There are four possible bases of subject-matter jurisdiction over child custody determinations under the UCCJEA: (1) California was the child's home state when the action was commenced, or within six months before it was commenced and the child is absent from the state but a person acting as a parent continues to live in the state; (2) no

other state is the child's home state, or a court of the child's home state has declined to exercise jurisdiction on the ground that California is the more appropriate forum, and both the child and a person acting as a parent have a significant connection with California and substantial evidence is available in California concerning the child's care, protection, training, and personal relationships; (3) all courts with jurisdiction have declined to exercise it on the ground that California is the more appropriate forum; or (4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).  (Fam. Code, § 3421, subd. (a); *In re L.C.* (2023) 90 Cal.App.5th 728, 736–737.)[7]

Family Code section 3402, subdivision (g), defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned."  Under the UCCJEA, a California court must "treat a foreign country as if it were a state of the United States for the purpose of"

---

[7] Family Code section 3421, subdivision (a), provides in its entirety: "(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. [¶] (2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. [¶] (3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428. [¶ (4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

14

determining jurisdiction.  (*In re Marriage of Nurie, supra,* 176 Cal.App.4th 478 at p. 490; Fam. Code, § 3405, subd. (a).)

"The UCCJEA takes a strict 'first in time' approach to jurisdiction. …  [O]nce the court of an appropriate state [citation] has made a 'child custody determination,' that court obtains 'exclusive, continuing jurisdiction....' [citation.] The court of another state: [¶] (a) Cannot modify the child custody determination [citations]; [and] [¶] (b) Must enforce the child custody determination [citations.]"  (*In re Marriage of Paillier* (2006) 144 Cal.App.4th 461, 469.)

Where the facts are uncontested, "the ultimate determination of jurisdiction is a question of law we review de novo."  (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1287, fn. 5 (*Schneer*), citing *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 ["When no conflict in the evidence exists . . . the question of [personal] jurisdiction is purely one of law and the reviewing court engages in an independent review of the record"]; *Ariana K., supra*, 120 Cal.App.4th at p. 701 ["Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review"].)

By contrast, where the facts are contested, an appellate court reviews factual findings underlying a jurisdictional determination for substantial evidence.  (*Schneer*, *supra*, 242 Cal.App.4th at pp. 1286–1287, citing *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 954.)  "When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family court's findings."  (*Schneer*, *supra*, 242

Cal.App.4th at pp. 1286–1287, citing *In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051.)[8]

### C. Analysis

#### 1. Trial court's authority to issue the May 2024 order

As summarized above, the trial court stated in the May 2024 order that it was exercising its inherent authority to *sua sponte* reconsider a clerical error, because the February 2021 order "does not accurately reflect the information provided in the record." It added that it had provided the parties with notice and an opportunity to be heard, and it intended to reevaluate the UCCJEA requirements to make a clear determination as to child 1's home state.

A trial court has inherent authority to correct clerical errors, including errors made in the entry of the judgment or due to inadvertence of the court. (*Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1035 (*Conservatorship of Tobias*).) " 'The term "clerical error" covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. If an error, mistake, or omission is the result of inadvertence, but for which a different judgment would have been rendered, the error is clerical and the judgment may be corrected ....' [Citation.] The signing of a judgment, which does not express the actual judicial intention of the court, is clerical rather than judicial error." (*Ibid.*, citations omitted.)

Under Code of Civil Procedure section 473, subdivision (d), "[t]he court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed." (Code Civ. Proc., § 473, subd. (d).) Relief under "section 473 is addressed to the sound discretion of the trial court and the trial court's order will not be disturbed absent a

---

[8] We decline to follow those cases which have held that a reviewing court independently reweighs the trial court's findings of jurisdictional facts. (See, e.g., *Schneer*, *supra*, 242 Cal.App.4th at pp. 1283–1287.)

showing of clear abuse of discretion." (*Conservatorship of Tobias, supra,* 208 Cal.App.3d at p. 1035, citing *Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1411; see also *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts have inherent authority to correct clerical errors in court records].)

Nevertheless, "[a]n amendment that substantially modifies the original judgment ... may not be made by the court under its authority to correct clerical error ... unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*In re Candelario* (1970) 3 Cal.3d 702, 705; *Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 507.) "The difference between judicial and clerical error rests not upon the party committing the error, but rather on whether 'it was the deliberate result of judicial reasoning and determination.' " (*Aspen, supra,* 235 Cal.App.3d at p. 1204, quoting *Estate of Doane* (1964) 62 Cal.2d 68, 71.) "A correctable clerical error includes one made by the court which cannot reasonably be attributed to the exercise of judicial consideration or discretion. [Citation.] 'Clerical error ... is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in recording the judgment rendered." ' [Citation.]" (*Aspen, supra*, at p. 1204.)

" 'The rule is well settled in this state that every court of record has the inherent power to correct its records so that they shall conform to the facts and speak the truth, and likewise correct any error or defect occurring in a record through acts of omission or commission of the clerk in entering of record the judgments or orders of the court, and such correction may be made at any time by the court on its own motion... .' " (*Siegal v. Superior Court of Los Angeles County* (1968) 68 Cal.2d 97, 101.) "It is equally well established that the court in the exercise of this power is not authorized to do more than to make its records conform to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error, or make of record an order or judgment that was never, in fact, given.... [Citations.]' [Citation.] [¶] It is not the function of a *nunc*

17

*pro tunc* order 'to make an order now for then, but to enter now for then an order previously made.' [Citation.]" (*Ibid.*)

Mother argues that the trial court had no inherent authority to *sua sponte* reconsider the February 2021 order after the time to appeal had expired. She notes that, while the trial court relied on *Le Francois* in exercising its inherent authority to reconsider the February 2021 order, that decision included the caveat that "[w]hat we say about the court's ability to reconsider *interim* orders does not necessarily apply to *final* orders, which present quite different concerns." (*Le Francois, supra*, 35 Cal.4th at p. 1105.) According to Mother, if a party does not timely appeal an order, "the issues determined by the order are res judicata," which leaves the order final and binding on the plaintiff and the court, citing *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638 (*In re Marriage of Gruen*), and *Guenter v. Lomas and Nettleton Co.* (1983) 140 Cal.App.3d 460.

Applying the principles outlined above, we conclude the trial court was correcting a clerical error, which it had the inherent authority to do. The court expressly stated that it was reconsidering a clerical error that was evident from the inconsistent statements in the November 2020 minute order and the February 2021 order, with respect to child 1's home state. Given the inconsistency between those two prior orders—which stemmed from the same hearing—it was evident that one of them contained an error that was not the result of judicial function, but rather of inadvertence. (*Conservatorship of Tobias, supra,* 208 Cal.App.3d at p. 1035.)

Mother's reliance on *In re Marriage of Gruen* is unpersuasive. In that case, the court held that the family court had exceeded its jurisdiction by modifying a pendente lite child and spousal support order because the Legislature had expressly intended that temporary support orders may not be modified retroactively. (*In re Marriage of Gruen, supra*, 191 Cal.App.4th at p. 631.) Here, by contrast, the trial court did not retroactively

modify a final order, but rather corrected a clerical error, something that was not at issue in *In re Marriage of Gruen*.

The other authority Mother cites is similarly inapposite, as it dealt with situations where the trial court changed its earlier ruling upon a subsequent determination that it had been wrong, or because it functionally conducted a new trial without complying with the procedural requirements for doing so—facts not at issue here. (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463.) Mother argues, for instance, that the trial court here "ultimately based its decision and made a determination on the UCCJEA declaration and other new documents presented by husband in reversing its original orders in the [February 2021 order]." However, the trial court did not base its decision on any of the new evidence submitted by either party in connection with Mother's September 7, 2023, request for order. On the contrary, the court relied solely on information that had been presented before the initial hearing in November 2020—Father's petition for dissolution, and the parties' respective UCCJEA declarations at the time.

In sum, the trial court's issuance of the May 2024 order corrected a clerical error in the February 2021 order, and it was neither an abuse of discretion nor an act in excess of the court's jurisdiction. (*Conservatorship of Tobias, supra*, 208 Cal.App.3d 1031, 1036; see also *Bowden v. Green* (1982) 128 Cal.App.3d 65, 71–72 ["[i]n determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention"], citing 4 Witkin, Cal. Procedure, supra, § 75, p. 3235 ["Where the error is made by the judge it is seldom clear from the record or other extrinsic evidence whether the error is judicial or clerical; i.e., whether (a) he knowingly rendered a judgment without realizing that it was bad in law (judicial error), or (b) inadvertently or by mistake signed findings or a judgment or order which he did not intend to constitute his decision. The issue is one of the judge's intent, and the best

19

evidence is the judge's own statement, either express or implied from the order of correction"].)

### 2. UCCJEA home state determination

As set forth above, a child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned." (Fam. Code, § 3402, subd. (g).)

The trial court here determined that California was child 1's home state because the undisputed facts showed that she had lived in the state with both parents for at least six consecutive months immediately before the commencement of the child custody proceeding.

Mother argues that the trial court failed to address the parents' intent, which she claims is a "necessary requirement for the temporary absence aspect of the home state analysis pursuant to [Family Code section 3402, subdivision (g)]." She argues she submitted evidence showing that, when she first came to the United States from Vietnam with child 1 in January 2020, she only intended to stay temporarily until May 2020. Once the COVID-19 pandemic began, though, she was forced to remain in the United States through the date the dissolution petition was filed in October 2020. Mother asserts that she had "every intent on returning to reside in Vietnam." Thus, she argues, her stay in the United States "should be treated as temporary absence," and child 1 "should be deemed to have lived in Vietnam for more than 6 consecutive months immediately prior to the filing of the petition for dissolution." As a result, she argues, "the trial court failed to complete the home state analysis when it did not consider [mother's] intent regarding where she was going to reside," in which case the court would have determined that the time from January 22, 2020, to October 23, 2020, was a temporary absence and "should not be counted towards 6 month period for her physical presence."

20

Mother misconstrues Family Code section 3402, subdivision (g), and the term "temporary absence." That subdivision provides in full: " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (Fam. Code, § 3402, subd. (g).)

By its plain language, the starting point for the analysis is a state in which the child has lived with a parent for at least six consecutive months immediately before the commencement of the custody proceeding. Any temporary absence is therefore an absence from such a state. Mother argues that Vietnam should be considered child 1's home state, and her time in California should be considered the temporary absence from Vietnam. However, child 1 had not lived in Vietnam within the six months immediately before the commencement of this child custody proceeding, but had lived in California during that time—accordingly, Vietnam cannot be considered the home state.

Mother cites *In re Marriage of Nurie* for the proposition that "temporary absence" requires consideration of the parents' intentions, "as well as other factors relating to the circumstances of the child's or family's departure from the state where they had been residing." In that case, the child was born in California on September 16, 2002, and went to Pakistan with his mother on February 19, 2003, where he remained when the dissolution proceeding commenced on June 20, 2003. (*In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 485.) The trial court held that California was the child's home state. On appeal, the mother argued that California was not the child's home state because he had not physically resided in the state for a full six months before he was taken to Pakistan. (*Id.* at p. 493, fn. 12.) The court of appeal disagreed, and affirmed the trial court's finding that California was the child's home state. (*Ibid.*)

21

In doing so, it explained that, although the child was in Pakistan at the time the custody proceeding commenced, the parents intended for him to return to California shortly thereafter. (*In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 493, fn. 12.) "Because the trip at least began as a 'temporary absence,' under any applicable standard, the time Son spent in Pakistan before Wife informed Husband that she would not return to California should be considered part of Son's period of residence in California," citing Family Code section 3402, subdivision (g), and case law from other states. (*Ibid*.)

We find the case distinct. At the time the custody proceeding commenced, the child had lived in both California and Pakistan. For that reason, the court "looked to the mother's intent in leaving California for Pakistan in order to determine whether the child's absence from California was 'temporary.' " (*Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1090 (*Ocegueda*).) Here, by contrast, child 1 had lived only in California with a parent for at least six consecutive months immediately before the commencement of the child custody proceeding, and there was no period of temporary absence to be taken into account.

Although the parties' subjective intent can be relevant in certain situations when determining home state jurisdiction, Mother has not cited any authority that it can be relevant where the child has lived in one state exclusively for at least six consecutive months immediately before the commencement of the child custody proceeding. (See, e.g., *Ocegueda, supra*, 232 Cal.App.4th at p. 1088, fn. 5 ["This is not to suggest that the parties' subjective intent to remain in a jurisdiction is *never* relevant in determining home state jurisdiction, only that it is never relevant for determining whether a child 'lives' in a particular state. When the child is moved to another state and 'lives' in that second state, whether that is a temporary absence from the first state will often require inquiry into a party's subjective intent to remain in that state."].)

The trial court here properly determined that California is child 1's home state.

### 3. Testimony of the parties

Mother argues that the trial court erred by not allowing testimony of the parties as required by Family Code section 217. That section provides in part: "At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties." (Fam. Code, § 217, subd. (a).)

However, Mother cites no evidence that she sought to provide testimony and was rebuffed by the trial court. We consider the issue forfeited. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1422 [even if asserted error constitutes action in excess of trial court's jurisdiction, it is forfeited if not timely asserted].)

Any such error would also be harmless. Mother argues that her testimony would have alerted the court to the relevance of her intent to return to Vietnam. As we have explained, though, any such intent was not relevant here.

### 4. Trial court's "findings"

Mother argues that the trial court made "numerous clearly erroneous factual findings" that prejudiced her.

First, she claims that the trial court erroneously found that she "did not provide any documentation indicating [child 1] was meant to return and live in Vietnam as of May of 2020." She lists various pieces of evidence she submitted which, she claims, show that she did intend to return to Vietnam with child 1. However, the alleged "finding" by the trial court was a statement at the March 28, 2024, hearing, and was not part of the May 2024 order. As we have explained, the May 2024 order based its conclusion solely on Father's dissolution petition and the parties' UCCJEA declarations submitted in November 2020. Moreover, the court also stated at the hearing that its "analysis of the child's home state is based on her physical presence alone [an] objective test."

23

Second, Mother objects to the trial court's statement at the hearing that a flight itinerary Mother had submitted into evidence to show intent to return to Vietnam "appeared to have been doctored." Again, though, the May 2024 order and the trial court's other statements at the hearing make clear that it based its ruling on Father's dissolution petition and the parties' UCCJEA declarations submitted in November 2020, not on Mother's intent to stay in California or return to Vietnam.

Third, Mother objects to the trial court's statement in the May 2024 order that the February 2021 order "does not accurately reflect the information provided in the record." She cites various pieces of evidence in the record allegedly showing that the February 2021 order was, in fact, accurate. For instance, she notes that Father's counsel approved the February 2021 order as to form. However, in reaching its conclusion that the February 2021 order did not accurately reflect the information in the record, the trial court relied on evidence that had been submitted in advance of its decision at the November 30, 2020 hearing—Father's petition for dissolution, and the parties' respective UCCJEA declarations. Whatever persuasive value the "approval as to form" may have had, it was not an abuse of discretion for the trial court to base its ruling on the dissolution petition and UCCJEA declarations.

Mother also cites the trial court's subsequent findings and order after hearing for the February 18, 2021, hearing, which stated that the court was taking "temporary emergency jurisdiction over [child 1] [¶] The minor child may not leave the United States till further order of the Court [¶] [c]ustody and visitation is reserved till the trial on the DVRO on 7/7/2021." Although Mother does not explain the significance of that order, the implication appears to be that the court would only have needed to exercise such temporary emergency jurisdiction over child 1 if it had previously determined that Vietnam was her home state. However, that order contains its own inconsistencies that limit its probative value. Although the order purports to take temporary emergency jurisdiction over child 1, the earlier minute order issued after the February 18, 2021,

24

hearing stated that the trial court "takes temporary emergency jurisdiction over the [child 2] DOB: 06/14/2016," thereby listing child 2, but with child 1's date of birth. Whether products of confusion or scrivener's errors, these inconsistencies preclude us from placing any weight on these particular orders to conclude that the trial court abused its discretion.

Lastly, Mother notes that the minute order for the November 30, 2020, hearing also stated that Vietnam was the home state for child 2, who was born in California in March 2020. She argues it makes no sense that the trial court would have determined child 2's home state was Vietnam, the implication being that the trial court inadvertently switched the children's names with their respective home states in that minute order. According to Mother, that undermines the trial court's conclusion in the May 2024 order that the November 30, 2020, minute order was an accurate reflection of the trial court's findings.

However, in the May 2024 order, the trial court did not state that the November 30, 2020, minute order was accurate in all respects. Indeed, determinations about the home state for child 2 were not at issue. Instead, the trial court simply noted that it was "unclear whether the Court determined that Vietnam is [child 1's] home state for purposes of an initial custody determination."[9]

Fourth, and finally, Mother objects to the trial court's statement in the May 2024 order that, "to the extent Vietnam order was made in contravention of husband's due process rights, it would not be recognizable or enforceable by this Court." She cites evidence in the record allegedly showing that Father was properly served by the Vietnam court, which "notified him of the petition he claims he was not aware of." Father's due process rights therefore were not violated, she argues.

---

[9] Mother also refers to a request for reconsideration allegedly brought by Father after the February 2021 order was issued. However, she cites no evidence in the record showing such a request, and we have not been able to identify any.

25

However, the trial court here did not base its ruling on a conclusion that Father's due process rights were violated because he was not properly served. Instead, the court stated in full: "To the extent Vietnam order was made in contravention of Husband's due process rights, it would not be recognizable or enforceable by this Court. The foreign custody order is otherwise problematic as Vietnam court lacked jurisdiction to make an initial custody determination in April 2023 as California has been the child's home state since October 2020. Absent further information, it appears the custody orders provided in the Vietnamese judgment were not made in substantial conformity with the UCCJEA jurisdictional requirements. Therefore, even if Wife registered the Vietnamese judgment in this case, it would not be enforceable here."

In other words, consistent with the trial court's threshold determination that California had been child 1's home state since October 2020, it held that the Vietnam court lacked jurisdiction to make an initial custody determination in April 2023.

## III.    DISPOSITION

The order is affirmed. Respondent may recover his costs on appeal.

_____
                 Wilson, J.

WE CONCUR:

_____
          Greenwood, P. J.

_____
          Danner, J.

*Thai v. Thi Cao*
H052338